FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 01, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| WILLIAM REED and JENNIFER REED, a married couple,<br><br>Plaintiffs,<br><br>v.<br><br>STATE FARM FIRE & CASUALTY COMPANY, and STATE FARM FIRE AND CASUALTY COMPANY a foreign insurance corporation,<br><br>Defendants. | No. 2:25-CV-00068-RLP<br><br>ORDER GRANTING MOTION TO COMPEL IN PART AND DENYING IN PART AND GRANTING MOTION FOR PROTECTIVE ORDER IN PART |

Before the Court are Plaintiffs William and Jennifer Reed's First Motion to Compel, ECF No. 14, and Defendant State Farm's Motion for Protective Order, ECF No. 20. The motions were heard by videoconference on November 25, 2025. Attorney Marshall Casey appeared for the Plaintiffs; attorney Terri Sutton appeared on behalf of Defendant State Farm.

This discovery dispute involves three categories of information: (1) State Farm's claims handling manuals, training materials, and documents describing processes and procedures for adjusting homeowner claims from January 1, 2010

ORDER RE MOTION TO COMPEL AND MOTION FOR PROTECTIVE ORDER ~ 1

through March 1, 2025; (2) personnel records reflecting performance evaluations, job changes, or bonuses for the adjusters and managers involved in handling the Reeds' claim; and (3) contracts and agreements between State Farm and a contractor which supplied adjusters for the claim. For the reasons set forth below, the Court finds that the foregoing are discoverable categories of information, but that limitations are appropriate. Good cause exists to grant a protective order with revisions.

## FACTS/BACKGROUND

State Farm sold the Reeds an insurance policy on their home. ECF No. 1, ¶ 2.1. On March 24, 2024, the Reeds' home burned in a fire, causing significant damage, and the Reeds made a claim with State Farm the following day. *Id.* at ¶ 2.12, 2.13. On July 11, 2024, State Farm completed its initial loss investigation and informed the Reeds that the estimated repairs were $520,111.32 with an actual cash value of $500,024.86. *Id.* at ¶ 2.16. Employees of Renfroe, a company contracted by State Farm to provide adjusters, worked on behalf of State Farm in the adjustment of the Reeds claim. ECF No. 16 at 9. State Farm paid the Reeds the actual cash value in late July 2024. *Id.* at ¶ 2.17. The Reeds believed the amount was insufficient and by August 5, 2024, the Reeds notified State Farm that their preferred contractor estimated repairs at $1,418,502.07. *Id.* at ¶ 2.21. State Farm conducted further investigation and on September 19, 2024, State Farm updated its repair estimate to $999,723.95. *Id.* at ¶ 2.22, 2.26.

ORDER RE MOTION TO COMPEL AND MOTION FOR PROTECTIVE ORDER ~ 2

Based on the updated estimate, State Farm paid the Reeds an additional $409,511.88, the limits of the dwelling coverage. *Id.* at ¶ 2.26. Additionally, the policy included an increased dwelling limit of $186,843 would be paid when the repairs were complete. *Id.* at ¶ 2.27. State Farm indicated that the increased dwelling limit amount was at risk if the Reeds did their repairs as estimated by their contractor. *Id.* State Farm took the position that the lower estimate was appropriate because trusses and other portions of the dwelling could be salvaged. *Id.* at ¶ 2.28.

In November 2024, the Reeds hired their own engineer for an opinion on salvaging the trusses and other portions of the home at a cost of $26,014.51. *Id.* at ¶ 2.29, 2.30. The Reeds notified State Farm they intended to move forward with demolition and construction, so any further inspection by State Farm would need to occur immediately. *Id.* at ¶ 2.31. State Farm responded that moving forward with demolition could prejudice State Farm's ability to investigate. *Id.* at ¶ 2.32. The Reeds allege State Farm's actions and delays prevented them from commencing construction until December 2024, resulting in added costs, stress, and mental anguish. *Id.* at ¶ 2.34.

The Reeds sued State Farm for (1) breach of contract, (2) bad faith, (3) negligent claims handling, (4) violation of the Consumer protection Act, and (5) violation of the Insurance Fair Conduct Act. The Reeds seek relief in the form of damages, interest, exemplary damages, and attorney fees and costs.

ORDER RE MOTION TO COMPEL AND MOTION FOR PROTECTIVE ORDER ~ 3

On April 30, 2025, the Reeds served nine requests for production. ECF No. 15 at 2. On June 2, State Farm produced responsive documents with objections, answers, and responses. ECF No. 17 at 4.

State Farm initially proposed a protective order on May 7, 2025. The parties corresponded regarding a possible protective order and other discovery issues from May to September and participated in an informal discovery conference with the Court on September 25, 2025. ECF No. 17.

On October 6, 2025, the Reeds filed the present motion to compel responses to the following three Requests for Production: (1) State Farm's claims handling manuals, training materials, and documents describing processes and procedures for adjusting homeowner claims from January 1, 2010 through March 1, 2025 (RFP 4); (2) personnel records reflecting performance evaluations, job changes, or bonuses for the adjusters and managers involved in handling this claim (RFP 6); and (3) contracts and agreements between State Farm and Renfroe (RFP 9). ECF No. 14.

State Farm objected to Requests for production 4, 6, and 9 and filed a Motion for a Protective Order. ECF Nos. 16, 20. In support, State Farm filed declarations from John Carter (ECF No. 22, 37), Michael Gardner (ECF No. 23), Kevin Mosby (ECF No. 24), Philip Rolfs (ECF No. 25), and Sally Rauschendorfer (ECF No. 26, 36).

ORDER RE MOTION TO COMPEL AND MOTION FOR PROTECTIVE ORDER ~ 4

Mr. Carter is employed by State Farm as a Process Manager and has knowledge of the policies and procedures State Farm provides its claims personnel to guide them in the adjustment of insurance claims. ECF No. 22 at 2. He indicates that documents responsive to the Reeds' Request for Production, State Farm's Standard Claim Processes (SCPs) and Jurisdictional References (JRs,) are proprietary and confidential. The SCPs and JRs were developed through substantial monetary and time investments and are not generally known or ascertainable by others, especially competitors. State Farm has developed its own industry policies which are unique to State Farm rather than relying on standard Insurance Service Office (ISO) forms. State Farm maintains confidentiality of its unique SCPs and JRs by requiring employees to annually sign a Code of Conduct which requires confidentiality and by seeking to limit access to SCPs and JRs by requiring a protective order or confidentiality agreement when they are required to be produced in litigation. According to Mr. Carter, State Farm has invested enormous amount of time and expense in developing the SCPs and JRs which cannot be quantified or monetized. As an example, he worked as part of team to review and update just one Jurisdictional Reference, a process which took approximately one year to complete. ECF No. 37.

Ms. Rauschendorfer is a Claim Consultant in State Farm's Property and Casualty Claims Consulting Services Department. She has knowledge of the Operation Guides (OGs) which contain the claims practices, procedures, and

ORDER RE MOTION TO COMPEL AND MOTION FOR PROTECTIVE ORDER ~ 5

standards which guide the handling of property insurance claims by State Farm. ECF No. 26. She indicates that some OGs responsive to Request for Product No. 4 are designated as confidential or trade secret. Ms. Rauschendorfer identified numerous OGs which, if disclosed, would likely put State Farm at a competitive or business disadvantage. According to Ms. Rauschendorfer, State Farm has incurred expense and devoted personnel resources to researching, developing, and updating these OGs which are unique to State Farm. Like the SCPs and JRs, confidentiality of the OGs is maintained through the employee Code of Conduct and seeking protective orders or confidentiality agreements when the OGs are disclosed in litigation. The OGs reflect considerable and ongoing efforts made by State Farm to develop and implement claims-handling processes that helps State Farm attract and retain customers. The confidential OGs are update at least every three years, if not more frequently, and review of just one OG took a team several months to complete. ECF No. 36.

     Mr. Mosby is a Staff Consultant at State Farm, having previously served as a Claim Specialist and Claim Team Manager as well as other positions. ECF No. 24. Mr. Mosby's Declaration contains information similar to Ms. Rauschendorfer's Declarations regarding a different group of OGs. The OGs describe processes and programs unique to State Farm which took significant time and resources to develop. ECF No. 24.

ORDER RE MOTION TO COMPEL AND MOTION FOR PROTECTIVE ORDER ~ 6

Ms. Gardner is a Human Resources Director at State Farm and has knowledge of State Farm's human resources procedures, compensation, employee performance evaluations, and similar. ECF No. 23. According to Ms. Gardner, State Farm's performance assessment processes are treated as proprietary and confidential. She notes employees have an expectation of privacy regarding their personal information and State Farm honors this expectation by treating performance assessment as proprietary and confidential. Accordingly, State Farm limits access and control to such documents, and State Farm employees are required to safeguard such information from unauthorized use, even if they depart the company. ECF No. 23.

Mr. Rolf is a State Farm Procurement Category Manager in the Purchasing Department and assists with negotiation of contracts, including claims adjusting service providers such as Renfroe. ECF No. 25. Mr. Rolf indicates that State Farm's position in the marketplace would be damaged if the Renfroe contract becomes public. Because State Farm is prominent in the marketplace, it has the ability to negotiate favorable contract terms, which might be jeopardized if Renfroe contract terms and pricing were publicly available. ECF No. 25.

## ANALYSIS

### 1. Scope of Discovery

Under Fed. R. Civ. P. 26(b)(1) "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. …

ORDER RE MOTION TO COMPEL AND MOTION FOR PROTECTIVE ORDER ~ 7

Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

While discovery is broad, it is not boundless. "Discovery of matter not 'reasonably calculated to lead to the discovery of admissible evidence' is not within the scope of Rule 26(b)(1)." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.12 (1978).

The Court finds that Plaintiffs are entitled to the following:[1]

Claims handling materials and training materials (RFP No. 4): As recognized by State Farm, Defendants must produce materials pertinent to the State of Washington that were in place from the time of Plaintiffs' claim to the present. Defendants must also produce any additional claims handling materials relied upon by individuals responsible for investigation, evaluation, and handling of Plaintiffs' claim. Plaintiffs have not presented any non-speculative theory that materials outside this scope would lead to the discovery of admissible evidence.

Personnel Files (RFP No. 6): Defendant must Produce "(1) the criteria by which the performance of any and all persons responsible for investigation, evaluation and handling of Plaintiffs' claim was evaluated; (2) the evaluations or reviews, including any disciplinary action, of any and all persons responsible for

---

[1] The issue of whether the disclosed materials shall be subject to a protective order is a separate issue, addressed below.

ORDER RE MOTION TO COMPEL AND MOTION FOR PROTECTIVE ORDER ~ 8

investigation, evaluation and handling of the claim; (3) the compensation for any and all persons responsible for investigation, evaluation and handling of the claim, including but not limited to the criteria by which bonus or other special or incentive compensation is determined; (4) the training of any and all persons responsible for investigation, evaluation and handling of Plaintiffs' claim." *Knaack v. Allied World Specialty Ins. Co.*, 2024 WL 1049819, at *2 (W.D. Wash. Mar. 11, 2024). Plaintiffs have not presented any non-speculative theory that evidence pertaining to a broader scope of personnel would lead to the discovery of admissible evidence.

<u>Contract with Renfroe (RFP No. 9)</u>: Defendant must produce the contract or contracts pertinent to the State of Washington that were in place at the time of Plaintiffs' claim to the present. Plaintiffs have presented a non-speculative theory that the terms of the contract a relevant to issues of bias and the qualifications of persons responsible for the investigation, evaluation, and handling of Plaintiffs' claim.

2.  Protective Order

Discoverable information is "presumptively public." *Fierro Cordero v. Stemilt AG Services LLC*, 142 F.4th 1201, 1207 (9th Cir. 2025), *quoting San Jose Mercury News, Inc. v. U.S. Dist. Ct.-N. Dist. (San Jose)*, 187 F.3d 1096, 1103 (9th Cir. 1999). Nevertheless, in order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," the Court can issue a

ORDER RE MOTION TO COMPEL AND MOTION FOR PROTECTIVE ORDER ~ 9

protective order, restricting the public dissemination of discovery materials. Fed. R. Civ. P. 26(c)(1). A party seeking a protective order has the burden of establishing good cause in the form of good cause that would arise from public disclosure. *Fierro Cordero*, 142 F.4th at 1207. If the Court finds a party has satisfied this initial burden, the Court must balance the public and private interests and determine whether less restrictive alternatives, such as redaction, can ameliorate concerns of harm. *In re Roman Catholic Archbishop of Portland*, 661 F.3d 417, 425 (9th Cir. 2011).

<u>Claims handling materials and training materials (RFP No. 4)</u>: Defendants have shown sufficient evidence that the identified materials either qualify as trade secrets or confidential research, development, or commercial information. For example, as indicated in the Declarations of John Carter and Sally Rauschendorfer, State Farm has developed unique claims processes, policies, guidelines, forms, and other materials based on substantial investments of time and personnel. State Farm has taken steps to ensure certain matters related claims handling and training remain confidential by requiring its employees to annually agree to keep its processes and policies private and confidential.

Federal courts in this circuit have recognized that, in this circumstance, there is good cause for issuance of a protective order. *See, e.g., Haldiman v Cont'l Cas. Co.*, 2014 WL 584305 (D Ariz. 2014); *Takata v Hartford*, 283 FRD 617, 621 (EDWA 2012). The value of these materials is derived precisely from the fact that

ORDER RE MOTION TO COMPEL AND MOTION FOR PROTECTIVE ORDER ~ 10

the information contained therein is not public. Thus, the private interests in preventing disclosure are strong. Redaction of discrete information from the materials at issue does not appear feasible. Thus, the Court is satisfied that the materials must be provided pursuant to a protective order that prohibits further dissemination of the materials to persons outside the current litigation.

The Court's determination of this issue is without prejudice. Should further discovery reveal that State Farm has not held the documents at issue in confidence or that the materials contain nothing more than general best practices that would be obvious to competitors, then the Court will reconsider whether the documents should be subject to a protective order. *See, e.g., McCallum v. Allstate*, 149 Wn. App. 412 (2009).

The Court further determines that State Farm's interest in protecting the aforementioned discovery from disclosure to competitors by placing reasonable restrictions on access to the materials by collateral litigants. *See Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1132 (9th Cir. 2003). Counsel for a non-party litigant may obtain a copy of the disclosed materials by submitting an application to this Court, verifying that counsel is currently involved in litigation against State Farm in state or federal court. The application shall specify the court where litigation is pending and the cause number. Disclosure of discovery to a collateral litigant shall be subject to a protective order, prohibiting dissemination of the discovery materials to any party or entity not involved in the specified court

ORDER RE MOTION TO COMPEL AND MOTION FOR PROTECTIVE ORDER ~ 11

case. Should State Farm object to a disclosure request from a collateral litigant, the objection and supporting argument shall be filed within 14 days of the date of request.[2]

Personnel files (RFP 6): Personnel information is often sensitive and must be handled with care. *See Reagan-Touhy v. Walgreen Co.* 526 F.3d 641 (10th Cir. 2008). Particularly because of the potential for dissemination over the internet, public access to an employee's personal, health, or family information can subject the employee to identity theft, harassment, or malicious disinformation. Given the nature of this case, there is no public interest in personal employee information that may be disclosed during discovery. Thus, discovery in this case shall be redacted to eliminate irrelevant or personally identifying information such as: social security

---

[2] The Court declines to require a that collateral litigant make a preliminary showing of relevance, as contemplated by *Foltz*. *See Foltz*, 331 F.3d at 1132-33. Such a requirement would be inconsistent with the rule recognized in *Fierro Cordero* that discovery may be accessed by the public, absent a showing of good cause for protection. *Fierro Cordero*, 142 F.4th at 1207. Here, the only good cause for limiting disclosure is the risk to State Farm should disclosure be made to a competitor. That risk can be alleviated by ensuring that disclosure is limited to an attorney representing a litigant in a pending case against State Farm who will be subject to a protective order.

ORDER RE MOTION TO COMPEL AND MOTION FOR PROTECTIVE ORDER ~ 12

numbers, dates of birth, tax information, home addresses, family member information, and health care or reasonable accommodation information. In addition, to the extent private employee information is discoverable and does not meet the aforementioned criteria for redaction, it shall be restricted to dissemination to persons involved in the current litigation. Private employee information is defined to include compensation details and employee performance or evaluation materials.

<u>Contract with Renfroe (RFP 9)</u>: Defendant has alleged that public disclosure of the financial contract with Renfroe would place it at a competitive disadvantage with other insurance companies. Defendant has not made any other specific showing of harm. At most, Mr. Rolfs' Declaration indicates that vendors "may be less likely" to agree to favorable terms if contracts "such as the Renfroe Contract" became public. ECF No. 25. This does not constitute sufficient harm.

It appears that the precise financial details of the contract have little bearing on the public's interest in assessing the merits of the parties' dispute. And Defendant's interests can be adequately addressed by a court order requiring that financial terms of the contract be redacted prior to any public dissemination of discovery materials.

3.  *Scope of Protective Order*

Plaintiffs raise the concern that the terms of Defendant's proposed protective order are too restrictive. Specifically, Plaintiffs object to Defendant's request that

ORDER RE MOTION TO COMPEL AND MOTION FOR PROTECTIVE ORDER ~ 13

the parties meet and confer before filing any materials that are subject to the protective order in conjunction with a dispositive motion. As Plaintiffs point out, this could unnecessarily delay litigation.

The Court determines Plaintiffs' concerns can be addressed by modifying the terms of the protective order.

The standard governing protection of discovery materials differs from that governing protection of materials filed with the Court. "When discovery material is filed with the court … its status changes" and the material becomes a judicial record. *Foltz*, 331 F.3d at 1135. The Ninth Circuit recognizes "a strong presumption in favor of access to court records." *Id*. When it comes to non-dispositive motions, the existence of a protective order will justify sealing discovery materials that are subject to the order. *Id.* But when it comes to dispositive motions or other motions touching on the merits of the case, a party seeking protection must establish reasons for sealing the materials. *See id.* at 1135-38.

Given the different standards governing the fruits of discovery and judicial records filed in relation to dispositive or quasi-dispositive motions, the Court will not automatically order that discovery materials be filed under seal simply because they are subject to a protective order. To streamline litigation, the Court directs the following process: Documents that are subject to the protective order which are filed pursuant to a dispositive motion must initially be filed under seal. The seal

ORDER RE MOTION TO COMPEL AND MOTION FOR PROTECTIVE ORDER ~ 14

will be removed after 14 days unless a motion is filed requesting to seal the documents from public disclosure based on compelling circumstances. If a motion to seal is filed, the question of whether the document will remain subject to sealing will be determined by Court order.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiffs' Motion to Compel, **ECF No. 14**, is **GRANTED in part** and **DENIED in part** as set forth herein.

2. In response to Request for Production No. 4, Defendants must produce materials pertinent to the State of Washington that were in place from the time of Plaintiffs' claim to the present. Defendants must also produce any additional claims handling materials relied upon by individuals responsible for investigation, evaluation, and handling of Plaintiffs' claim.

3. In response to Request for Production No. 6, Defendant must produce: (1) the criteria by which the performance of any and all persons responsible for investigation, evaluation and handling of Plaintiffs' claim was evaluated; (2) the evaluations or reviews, including any disciplinary action, of any and all persons responsible for investigation, evaluation and handling ffof the claim; (3) the compensation for any and all persons responsible for investigation, evaluation and handling of the claim, including but not limited to the criteria by which bonus or other special or incentive compensation is determined; (4) the training of any and all persons responsible for investigation, evaluation and handling of Plaintiffs'

ORDER RE MOTION TO COMPEL AND MOTION FOR PROTECTIVE ORDER ~ 15

claim. Redactions of irrelevant or personally identifying information may be made as set forth above.

4. In response to Request for Production No. 9, Defendant must produce the contract or contracts pertinent to the State of Washington that were in place at the time of Plaintiffs' claim to the present.

5. State Farm's Motion for Protective Order, **ECF No. 20**, is **GRANTED in part** and **DENIED in part** as set forth herein.

6. Within 14 days of the date of this Order, the parties shall file a proposed protective order that meets the terms of this Order.

7. Defendants shall provide the above-directed responses no later than three days after the Court's entry of a protective order. Defendants may provide responses at an earlier date should the parties reach a confidentiality agreement.

**IT IS SO ORDERED**. The District Court Clerk is hereby directed to enter this Order and to provide copies to counsel.

**DATED** December 1, 2025.



REBECCA L. PENNELL
United States District Judge

ORDER RE MOTION TO COMPEL AND MOTION FOR PROTECTIVE ORDER ~ 16